UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BILLYANN KRIS BOLLOCK,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,[1]<br><br>　　　　　Defendant. | CIVIL ACTION NO. 3:20-CV-01693<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

Plaintiff Billyann Kris Bollock ("Bollock") brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. (Doc. 1). This matter has been referred to the undersigned United States Magistrate Judge on the consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 9). For the following reasons, the Court directs that the Commissioner's decision be **VACATED**, and the case be **REMANDED** for further consideration.

**I.　BACKGROUND AND PROCEDURAL HISTORY**

On December 7, 2018, Bollock filed an application under Title II for a period of disability and disability insurance benefits, claiming disability beginning May 11, 2017, due

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

to anxiety, depression, stomach issues, gastroesophageal reflux disease ("GERD"), gastritis, irritable bowel syndrome ("IBS"), ankle and back issues, esophagitis, and osteoporosis. (Doc. 15-2, at 14, 17). The Social Security Administration initially denied the application on May 9, 2019, and upon reconsideration on June 28, 2019. (Doc. 15-2, at 14). Following a hearing held on January 29, 2020, Administrative Law Judge ("ALJ") David Romeo determined that Bollock is not disabled under section 216(i) and 223(d) and, therefore, is not entitled to benefits under Title II. (Doc. 15-2, at 26). The Appeals Council subsequently denied Wheaton's request for review. (Doc. 15-2, at 2).

On September 17, 2020, Bollock commenced the instant action. (Doc. 1). The Commissioner responded on April 8, 2021, providing the requisite transcripts from Wheaton's disability proceedings. (Doc. 14; Doc. 15). The parties then filed their respective briefs, with Bollock raising two principal reasons for reversal or remand. (Doc. 18; Doc. 19; Doc. 20).

## II.   STANDARDS OF REVIEW

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers

in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[2] Additionally, to be eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

    A.   ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019); *see* 20 C.F.R. § 404.1520(a). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(f).

    B.   JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Bollock was disabled, but whether the Commissioner's determination that Bollock was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

### III. THE ALJ'S DECISION

In his written decision, the ALJ determined that Bollock "has not been under a disability, as defined in the Social Security Act, from May 11, 2017, through the date of this decision." (Doc. 15-2, at 26). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4).

#### A. STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572. The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that Bollock "has not engaged in substantial gainful activity since May 11, 2017, the alleged onset date," and therefore proceeded to step two of the analysis. (Doc. 15-2, at 17).

#### B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 404.1520(c). If, however, a claimant establishes a severe impairment or combination of

impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Bollock had several medically determinable impairments—thoracic vertebral compression fractures, left rib and left clavicle fractures, IBS, GERD, lymphocytic colitis, esophagitis and chronic gastritis, major depressive disorder, and general anxiety disorder—all severe. (Doc. 15-2, at 17). In addition, the ALJ found that Bollock had the following non-severe impairments: osteoporosis, hyperglycemia, hypertension, vitamin D deficiency, and insomnia. (Doc. 15-2, at 17).

    C.    STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise, the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. § 404.1520(d).

Here, the ALJ determined that none of Bollock's impairments, considered individually or in combination, meet or equal the severity of listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (Doc. 15-2, at 17). The ALJ considered the musculoskeletal listings 1.04 (disorders of the spine), 1.07 (fracture of an upper extremity), and 1.08 (soft tissue injury); the digestive system listing 5.06 (inflammatory bowel disease); and the mental impairment listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). 20 C.F.R. Part 404, Subpt. P, App. 1 §§ 1.00, 5.00, 12.00; (Doc. 15-2, at 17).

D.    Residual Functional Capacity

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity ("RFC"), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)–(c).

Here, Bollock alleged that her medical impairments caused difficulties sitting, standing, walking, bending, pulling, pushing, climbing, stair climbing, functioning under pressure, concentrating, loss of memory, completing tasks, inability to focus fearing others, and sleeping. (Doc. 15-6, at 18). Bollock further alleged that her medical impairments affected her ability to run, walk, and stand for extended periods. (Doc. 15-6, at 18). The ALJ found that while Bollock's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Bollock's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 15-2, at 20). The ALJ went on to detail Bollock's medical records and treatment history. (Doc. 15-2, at 20-24). After weighing and considering the evidence, the ALJ determined that Bollock had the, "[RFC] to perform light work as defined in 20 C.F.R. 404.1567(b)," with additional limitations:

> [Bollock] is able to lift or carry 20 pounds occasionally, and 10 pounds frequently; and [s]he can push/pull at the same amount as [s]he can lift and/or carry. In addition, [s]he can sit, stand or walk up to six hours in an eight-hour workday. [Bollock] is limited to frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; but she can never climb ropes[,] ladders[,] or scaffolds or be exposed to heights, or moving mechanical parts. [Bollock] is limited to occasional interaction with coworkers and supervisors and no interaction with the public. She is limited to occasional changes in the work setting and requires ready access to a restroom. [Bollock] will need to use the restroom during 15-minute morning and afternoon breaks and during the 30 minute lunch period, and she will require three additional six minutes bathroom breaks throughout the workday. [Bollock] cannot tolerate high volume output, very short deadlines or high levels of precision. She is limited to a low level of work pressure defined as work not requiring multitasking, very detaned job tasks, significant independent judgment very short deadlines, [and] teamwork in completing job tasks.

(Doc. 15-2, at 19-20).

E.  STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform [her] past relevant work despite his limitations, [she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, based on testimony adduced from a vocational expert at Bollocks's administrative hearing, the ALJ

determined that Bollock "is unable to perform any past relevant work," and, thus, proceeded to step five of the sequential analysis. (Doc. 15-2, at 24).

### F. STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). A claimant who can adjust to other work is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, considering Bollock's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Bollock can perform. (Doc. 15-2, at 25). In making that determination, the ALJ relied on the vocational expert's testimony that Bollock was able to perform the requirements of occupations such as a laundry worker, cleaner, or bottling line attendant with jobs existing in the national economy ranging from 11,000 to 104,000. (Doc. 15-2, at 25, 63-64). Accordingly, the ALJ determined that Bollock is not disabled as defined by the Social Security Act and denied her application for benefits. (Doc. 15-2, at 26).

### IV. DISCUSSION

On appeal, Bollock asserts that "[t]he conclusions and findings of fact of the [ALJ] are not supported by substantial evidence and are contrary to law and regulation." (Doc. 1, at 2). Specifically, Bollock asserts that the ALJ failed to properly evaluate the mental opinion of consultative psychologist Andrew Cole, Psy. D. ("Dr. Cole"), and that the ALJ's reasons for finding that the opinion was only "somewhat persuasive" were illegitimate. (Doc. 18, at 4-9). Additionally, Bollock argues that the ALJ failed to properly evaluate the physical opinion of treating physician, Donald J. Sweeney, D.O. ("Dr. Sweeney"), and that the ALJ's reasons for finding that the opinion was only "somewhat persuasive" were illegitimate. (Doc. 18, at

10-14). In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence and reflects a proper application of the law and regulations. (Doc. 19, at 27; Doc. 14, at 2-3).

For the reasons set forth below, the Commissioner's decision will be vacated, and the case will be remanded for further consideration. Upon remand, the ALJ is instructed to consider and make specific findings as to all relevant probative medical evidence, including assessing the credibility of the evidence and weighing the evidence.

### A.   SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE ALJ'S WEIGHING OF DR. COLE'S MENTAL OPINION

Bollock asserts that The ALJ failed to properly consider Dr. Cole's mental opinion and that the RFC does not adequately account for her impairments. (Doc. 18, at 9). In response, the Commissioner argues that the ALJ's analysis of Dr. Cole's opinion fully conformed with the revised regulatory scheme. (Doc. 19, at 22); *see* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)). Further, the Commissioner argues that despite finding that Dr. Cole's opinion is only "somewhat persuasive," the ALJ "essentially adopted it," finding that the overall medical evidence supported Bollock having some difficulties interacting with others and limiting her to simple work with minimized interactions with co-workers, supervisors, and the public. (Doc. 19, at 23). However, a review of the record convinces the Court that the ALJ erred in applying the relevant legal standards to the facts of this case. In particular, the ALJ improperly supplanted the opinions of Dr. Cole with his personal observation and speculation.

The Third Circuit has ruled that the ALJ – not treating or examining physicians or

State agency consultants – must make the ultimate disability and RFC determination. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). "[RFC]" is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d at 121 (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. When determining an individual's RFC, the ALJ must consider all the evidence of the record including medical signs and laboratory findings, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018).

      As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 404.1520c(b). And the Commissioner's consideration

of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. § 404.1520c(b)(3). To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter v. Harris*, 642 F.2d 700, 704, 706-707 (3d Cir. 1981).

In this case, Bollock argues that the ALJ failed to properly evaluate Dr. Cole's mental opinion and that the ALJ failed to acknowledge that the reason Bollock did not receive mental health treatment at the time that Dr. Cole's opinion was rendered was due to the severity of her anxiety. (Doc. 18, at 5-6, 9). "In the case of mental impairment," like anxiety, "a lapse in treatment or failure to treat alone is not a basis for finding that the claimant is not disabled." *Wooten v. Astrue*, No. 11-CV-7592, 2012 WL 6601397, *4 (E.D. Pa. Dec. 17, 2012). While the ALJ may infer the lack of medical treatment for Bollock's mental impairments is due to the

lack of severity of the symptoms, the ALJ is charged with inquiring and addressing the reasons before reaching such a conclusion. *See e.g.*, *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003); *Warne v. Saul*, No. 3:19-CV-01489, 2020 WL 6787162, at *12–13 (M.D. Pa. Oct. 2, 2020), *report and recommendation adopted*, No. 3:19-CV-1489, 2020 WL 6781932 (M.D. Pa. Nov. 18, 2020); S.S.R. 16-3P. The lack of development of the record regarding the extent of Bollock's mental impairments prevents addressing this issue.

Generally, an ALJ must not "find an individual's symptoms inconsistent with the evidence in the record on [the basis of non-compliance with treatment] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." S.S.R. 16-3p at *9. The ALJ "may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, as to why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." S.S.R. 16-3p at *9. In *Newell v. Comm'r of Soc. Sec.*, the Third Circuit noted that under SSR 96-7p:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

347 F.3d at 547 (quoting SSR 96–7p at *5–6). Valid alternative reasons for not seeking treatment can include when a claimant's mental impairments prevent him or her from understanding "the appropriate treatment for or the need for consistent treatment of his or her impairment," when a claimant cannot afford treatment or when a claimant is not "aware that he or she has a disorder that requires

treatment." S.S.R. 16-3p at *10; see Newell, 347 F.3d at 547 (claimant could not afford treatment).

In relevant part, Bollock suffers from anxiety and depression. (Doc. 15-8, at 92). According to a medical record from April 7, 2017, Dr. Sweeney referred Bollock to "Jerry Cerrone" ("Dr. Cerrone") for a psychological examination for disability because "job responsibility appears to be different and too much stress is exacerbating her anxiety and IBS." (Doc. 15-8, at 42-44). The administrative record does not include any treatment records from Dr. Cerrone. On January 11, 2018, Dr. Sweeney noted that Bollock's treatment plan included continuing with Dr. Cerrone for counseling. (Doc. 15-8, at 21). During the administrative hearing held on January 29, 2020, Bollock testified that she received psychological treatment for her anxiety and depression from Dr. Cerrone, but, due to her "problems," Bollock was discharged from care when she "missed a couple appointments." (Doc. 15-2, at 50-51). Bollock further testified that she is currently taking anxiety medication and Dr. Sweeney is the sole medical provider for such medications. (Doc. 15-2, at 49, 51).

Dr. Cole, a consultative examiner, evaluated Bollock for her mental impairments on April 5, 2019. (Doc. 15-8, at 92). Dr. Cole noted that Bollock denied a history of inpatient psychiatric treatment but received outpatient psychotherapy in Wellsboro, Pennsylvania, for several months in 2017, which ended when her therapist discontinued treatment due to missed appointments. (Doc. 15-8, at 92-93). Dr. Cole noted that eye contact was fair, nervousness in the interview negatively impacted her ability to articulate her thoughts and feelings, attention and concentration were mildly impaired, and that Bollock reported feeling anxious and cried during the interview. (Doc. 15-8, at 94-95). However, Dr. Cole stated that Bollock's speech was fluent and clear, her thought processes were coherent and goal-oriented with no evidence

of hallucinations, delusions, or paranoia, her affect was anxious and depressed, and her insight and judgment were fair. (Doc. 15-8, at 94-95). Additionally, Dr. Cole noted Bollock did not report any current outpatient treatment and recommended individual psychological therapy, psychiatric intervention, and medical follow-up. (Doc. 15-8, at 95). Dr. Cole diagnosed Bollock with unspecified anxiety and depressive disorder and concluded that Bollock's impairments limited her to understand, remember, and carry out simple work-related instructions, moderate interactions with supervisors and co-workers, and marked interactions with the public.[3] (Doc. 15-8, at 93, 99-100).

The ALJ found that Dr. Cole's opinion was only "somewhat persuasive." (Doc. 15-2, at 22). The ALJ noted that the "marked social interaction limitation is under evaluation of social functioning in the context of the level of treatment and reported activities of daily living," and emphasized that Bollock was not engaged in mental health treatment at the time of Dr. Cole's evaluation. (Doc. 15-2, at 22). Specifically, the ALJ speculated that Bollock's failure to seek additional psychological assistance is "an indication that she was able to control her symptoms without additional assistance." (Doc. 15-2, at 23). Based on Dr. Cole's opinion and other medical evidence in the record, the ALJ limited Bollock to "performing no more than simple and routine forms of work that minimize her contact with supervisors, co-workers and the public." (Doc. 15-2, at 23).

Here, the ALJ's finding that Dr. Cole's opinion was "somewhat persuasive" is not supported by substantial evidence in the record. (Doc. 15-2, at 22). Bollock argues, and the Court agrees, that the ALJ failed to acknowledge that the reason she was not receiving

---

[3] "Marked" limitation means a limitation that is "more than moderate" but "less than extreme." 20 C.F.R. Pt. 404, Subpt. P, App.1, Pt. A § 12.00(C).

treatment at the time that Dr. Cole's opinion was rendered was due to the severity of her anxiety. (Doc. 18, at 5-6). During the administrative hearing, the ALJ questioned Bollock about her previous psychological treatment for anxiety and depression by Dr. Cerrone. (Doc. 15-2, at 50-51). Bollock explained that due to her anxiety, Dr. Cerrone discharged Bollock because she "missed a couple appointments." (Doc. 15-2, at 50-51). Bollock further testified Dr. Sweeney is now the sole medical provider of prescriptions for her mental health. (Doc. 15-2, at 51).

Nonetheless, the ALJ inferred that Bollock's failure to seek additional psychological assistance is "an indication that she was able to control her symptoms without additional assistance." (Doc. 15-2, at 23). The ALJ did not acknowledge that the administrative record does not include medical records from Dr. Cerrone. Further, the ALJ did not examine why Bollock failed to seek additional psychological treatment or inquire Bollock about her intentions to seek out such treatment. The ALJ failed to consider "possible reasons [Bollock] may not comply with treatment or seek treatment consistent with the degree of [her] complaints." S.S.R. 16-3p at *9; *see cf., Newell*, 347 F.3d at 547-48 (explaining that where an individual provides a reason for failing to seek treatment, the ALJ should not infer that no disability existed based on the lack of medical records).

Moreover, the ALJ failed to provide "a clear and satisfactory explanation of the basis on which it rests." *Cotter*, 642 F.2d at 704. The Commissioner argues that regardless of how persuasive Dr. Cole's opinion was, the ALJ "essentially adopted" Dr. Cole's opinion, limiting Bollock to light work and minimal interactions with supervisors, co-workers, and the public. (Doc. 19, at 23). Although the ALJ does not reject Dr. Cole's opinion, he does not refer to medical evidence in the record that supports minimal limitations with the public, rather than

- 16 -

"marked" limitations. (Doc. 15-2, at 22). Nor does the ALJ explain how Bollock's anxiety impacted his mental RFC findings, merely noting that his RFC determination "is supported by the frequency of treatment for his medically determinable severe impairments . . ." (Doc. 15-2, at 22, 24). Before drawing a negative inference from her lack of seeking additional treatment for her anxiety and depression, the ALJ was required to question Bollock on the subject. *See* S.S.R. 16-3p; *see also Millard v. Saul*, No. 3:19-CV-00850, 2020 WL 1849719, at *5 (M.D. Pa. Apr. 13, 2020) (ALJ did not reference the claimant's lack of follow-up treatment at the administrative hearing, so he was precluded from inferring greater capabilities based on this evidence). The ALJ failed to inquire into whether Bollock's anxiety affected her ability to seek out psychological treatment, leading to the conclusion that her lack of pursuing treatment supported an inference that Bollock "was able to control her symptoms without additional assistance." (Doc. 15-2, at 22).

While it is possible for the ALJ to infer the lack of medical treatment for Bollock's mental impairments is due to the lack of severity of her symptoms, the ALJ is charged with inquiring and addressing the reasons before reaching such a conclusion. *See e.g.*, *Newell*, 347 F.3d at 547. Here, the ALJ failed to provide "a clear and satisfactory explanation of the basis on which it rests," as to why he deviated from Dr. Cole's opinion and why a lesser limitation was more appropriate given the evidence in the record. *Cotter*, 642 F.2d at 704. Additionally, the ALJ made an unsubstantiated inference as to Bollock's symptoms and functional effects based on her failure to seek or pursue regular psychological treatment, without first considering the evidence of record (Doc. 15-2, at 22); s*ee Newell*, 347 F.3d at 547. It is unclear whether the ALJ's deviation from the medical opinion offered by Dr. Cole, a consultative examiner, was supported by substantial evidence in the record.

Accordingly, for the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. Therefore, the decision of the Commissioner shall be vacated and the case remanded for further proceedings consistent with this Memorandum.

### B. THE COURT DECLINES TO ADDRESS BOLLOCK'S REMAINING ARGUMENTS

Because the Court shall vacate and remand the decision of the Commissioner for further consideration, concluding that the ALJ's RFC assessment is not supported by substantial evidence, the Court declines to address Bollock's remaining arguments. "A remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. 2016). The Court's evaluation of Bollock's additional contentions would be futile given that the ALJ's reconsideration of Bollock's mental health, in combination with her other impairments, may yield a different result.

## V. REMEDY

As a final matter, the Court addresses whether this case should be remanded to the Commissioner for further administrative proceedings or whether reversal and an award of benefits is appropriate. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100–01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000); *see e.g. Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985) ("[T]he proper course,

except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Here, the appropriate measure is to remand for further development of the record. Upon remand, the ALJ is instructed to consider and make specific findings as to all relevant probative medical evidence.

### VI. CONCLUSION

Based on the foregoing, the Commissioner's decision to deny Bollock disability benefits is **VACATED** and the case is **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order will follow.

**Dated: December 31, 2021**                    *s/ Karoline Mehalchick*
                                                **KAROLINE MEHALCHICK**
                                                **Chief United States Magistrate Judge**